# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO: 6:20-CV-1240-Orl-WWB-EJK

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM FIRE
AND CASUALTY COMPANY,

      Plaintiffs,

v.

COMPLETE CARE CENTERS, LLC, F/K/A
INTEGRATIVE PHYSICAL MEDICINE
HOLDING, LLC, MARC G. OTT and BRET G.
SCHEUPLEIN,

      Defendants.

_____/

**DECLARATION OF ALEX PETIT IN SUPPORT OF DEFENDANTS'
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMOVE
CONFIDENTIALITY DESIGNATIONS FROM RECORDS AND
INCORPORATED MEMORANDUM OF LAW**

I, Alex Petit, declare as follows:

1.     I am currently employed as Chief Financial Officer at Complete Care Centers, LLC, f/k/a Integrative Physical Medicine Holding, LLC ("Complete Care"). In that capacity, I am generally familiar with Defendant Complete Care's practices as to the confidentiality of certain Complete Care documents and data (the "Subject Documents").

2.     I make this Declaration based upon my own personal knowledge and experience, Complete Care's nonprivileged business records made available to me in the regular course of my duties, and information provided to me by other Complete Care personnel working under my direction and supervision. The information provided herein is true and correct to the best of my current knowledge, information, and belief. I make this declaration in support of Defendants'

Response in Opposition to Plaintiffs' Motion to Remove Confidentiality Designations from Records and Incorporated Memorandum of Law.

3.      In general, Complete Care maintains information related to its business practices and its daily operations related to its healthcare services as confidential, proprietary information, including the information contained in the Subject Documents. Complete Care is committed to protecting all of the aforementioned confidential information for its own business purposes, including by limiting access to information to Complete Care employees. In addition, to protect the confidentiality of certain documents, including the Subject Documents, all Complete Care employees are required to sign, and therefore bound by, a Confidentiality, Non-Compete and Non-Solicitation Agreement[1], which states in relevant part:

> Both Employer and Employee acknowledge that Employer has a substantial and legitimate business interest in, among other things, its confidential business information, trade secrets, patient and vendor lists, methods of business operation, and substantial relationships with specific existing and prospective patients and referral sources
>
> ***
>
> Employee acknowledges that the Business of Employer is a very competitive business
>
> ***
>
> **CONFIDENTIALITY.** Employee recognizes that Employer has developed unique practices, processes and services which it offers to the public that are materially different in their delivery to patients in comparison to competitors and are thus **highly sensitive in nature.** Employee also recognizes and acknowledges that, during the course of Employee's employment, Employee has had and/or will have access to this and other confidential information related to Employer's business (collectively, "Confidential Information"). **Employee agrees to keep such Confidential Information confidential at all times.** Such Confidential Information includes, but is not limited to, **any and all documents received or generated by Employer,** patient and **referral source names and contact information,** patient/customer lists, patient/customer and referral source data bases, the identity of prospective clients, data bases with internal Employer information, information regarding Employer sales and Employer transactions, sales force data, pricing information, **financial information, corporate**

---

[1]      An unexecuted copy of the Confidentiality, Non-Compete and Non-Solicitation Agreement is attached hereto as Exhibit 1.

DAVIS GOLDMAN, PLLC · MIAMI | HOLLYWOOD · TEL 305·800·6673 · FAX 305·675·7880

**information**, personnel information, technical data, specifications, samples, **practices, procedures and methods of operation, trade secrets, and trade secrets relating to services or products of Employer** and other proprietary information. (Emphases added).

4.      The job description document (Bates No. COMPLETE CARE-NB_0000016) contains trade secret and/or nonpublic and sensitive information relating to the essential functions of an Accounts Receivable Specialist at Complete Care, which Defendants seek to protect in the ordinary course of their business. In particular, Complete Care purposefully omits from public job postings what it considers the "essential functions" of a position, because that information is "sensitive in nature" and would be valuable to Complete Care's competitors, some of whom may very well review the docket entries in this proceeding.

5.      The "Employee Statements on Billing" documents (Bates Nos. COMPLETE CARE-NB_0025132 – COMPLETE CARE-NB_0025148) detail Complete Care's billing and financial practices and/or identify and summarize Complete Care's employees' "thoughts and understanding" of its billing, financial and collection processes. Specifically, these documents which were created for the ongoing settlement negotiations provide detailed information regarding Complete Care's internal procedures, billing methodologies and practices of how they train their employees to discuss certain billing and financial issues with patients, and disclose how Complete Care's employees go about collecting outstanding payments from patients. These documents contain competitively sensitive information that is not publicly known and if released would confer a competitive advantage to Complete Care's competitors.

6.      Complete Care's recommended providers (Bates Nos. COMPLETE CARE-NB_0025130 and COMPLETE CARE-NB_0025131) are confidential nonpublic and sensitive business information, procured by substantial time, effort and expense. Complete Care has

3

devoted years of work to understand which professionals are respected in their community and with whom their patients have satisfactory and beneficial experiences.

7.      The treatment protocols and guidelines (Bates Nos. COMPLETE CARE-NB_0025176 and COMPLETE CARE-NB_0025182 - COMPLETE CARE-NB_0025186) detail Complete Care's rehab protocols for its patients and prescribing guidelines for various injuries and treatments. Complete Care has expended years of time and expense to determine the appropriate treatment guidelines for different injuries. These documents represent Complete Care's belief of the most effective treatment plans for its patients and are proprietary to Complete Care. These documents also contain information that would be valuable to Complete Care's competitors, and Complete Care has taken and continues to take steps to prevent the inadvertent disclosure or dissemination of the information therein for public use.

8.      Consistent with Complete Care's confidentiality policies discussed in paragraph 3, Complete Care keeps the information in the Subject Documents confidential. This information is not disseminated to the public because they summarize certain of Complete Care's proprietary and confidential business procedures and practices. This information has been developed by Defendants through tremendous effort and at great expense, and if it were released to the public, Complete Care would be harmed substantially.

I declare under penalty of perjury that the foregoing is true and correct this 8th day of December, 2020.

ALEX PETIT

DAVIS GOLDMAN, PLLC · MIAMI | HOLLYWOOD · TEL 305·800·6673 · FAX 305·675·7880

# Exhibit 1

# CONFIDENTIALITY, NON-COMPETE
# AND NON-SOLICITATION AGREEMENT

This **CONFIDENTIALITY, NON-COMPETE AND NON-SOLICITATION AGREEMENT** ("Agreement") is made and entered into this _____ of _____, 20____ by and between Integrative Physical Medicine Services and Staffing, LLC, a Florida limited liability company ("Employer") and _____ ("Employee").

**WHEREAS**, Employer is engaged in the business of operating physical therapy clinics which provide chiropractic, arthritic and other pain relief services (hereafter, the "Business"), and has established a fine reputation and substantial goodwill in that business and serves clients throughout Central Florida; and

**WHEREAS**, both Employer and Employee acknowledge that Employer has a substantial and legitimate business interest in, among other things, its confidential business information, trade secrets, patient and vendor lists, methods of business operation, and substantial relationships with specific existing and prospective patients and referral sources; and

**WHEREAS**, Employer desires to employ Employee on an at-will basis or to retain Employee as an employee on an at-will basis, if already employed, and Employee desires to obtain such employment or to continue in such employment, if already employed; and

**WHEREAS**, Employee acknowledges that the Business of Employer is a very competitive business; and

**WHEREAS**, Employee acknowledges that Employee is to be employed in a key position of Employer, in which Employer reposes a great deal of responsibility, trust, and reliance; and

**WHEREAS**, Employer and Employee desire to begin or continue their business relationship subject to the establishment of this Confidentiality, Non-Compete and Non-Solicitation Agreement.

**NOW, THEREFORE**, in consideration of the covenants, promises, representations, and understandings set forth below, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **RECITALS**.   The foregoing recitals are true and correct and made a part of this Agreement.

2. **EMPLOYMENT**.   In consideration for entering into this Agreement, Employer agrees to employ or to continue to employ Employee, as applicable.  Nothing contained herein shall in

_____ Employee's Initials

## CONFIDENTIALITY, NON-COMPETE
## AND NON-SOLICITATION AGREEMENT

any way alter the employment-at-will nature of Employee's employment or provide any assurance by Employer of continuing employment.  Employee and Employer retain the right to terminate the employment relationship at any time for any reason or no reason, with or without cause.  Employer retains the sole and complete discretion to alter any term or condition of employment, including but not limited to Employee's hours of work, position, compensation, and Employer's method of determining Employee's compensation, and doing so is no defense to enforcement of this Agreement.

Employee represents and warrants that Employee is not subject to any restrictive agreement, other contractual or legal obligation, limitation, or prohibition that would prohibit Employee from entering into this Agreement, or accepting (or continuing) employment by Employer. In the event of a breach of this warranty, Employee agrees to indemnify and hold Employer harmless from any and all claims, costs, expenses, attorney's fees, lawsuits, or other liability arising from such breach.

3. **<u>CONFIDENTIALITY</u>**.   Employee recognizes that Employer has developed unique practices, processes and services which it offers to the public that are materially different in their delivery to patients in comparison to competitors and are thus highly sensitive in nature. Employee also recognizes and acknowledges that, during the course of Employee's employment, Employee has had and/or will have access to this and other confidential information related to Employer's business (collectively, "Confidential Information"). Employee agrees to keep such Confidential Information confidential at all times.  Such Confidential Information includes, but is not limited to, any and all documents received or generated by Employer, patient and referral source names and contact information, patient/customer lists, patient/customer and referral source data bases, the identity of prospective clients, data bases with internal Employer information, information regarding Employer sales and Employer transactions, sales force data, pricing information, financial information, corporate information, personnel information, technical data, specifications, samples, practices, procedures and methods of operation, trade secrets and trade secrets relating to services or products of Employer and other proprietary information.  With respect to this Confidential Information, Employee agrees as follows:

   a.  Employee will not, during or after the term of Employee's employment:

      i.  Publish, disclose, or make accessible any Confidential Information or any part thereof, to any person, firm, corporation, LLC, partnership or association or other entity for any reason whatsoever.  Employee shall not at any time divulge or reveal any of the Confidential Information to any person, party or entity, directly or indirectly.  Employee shall maintain the Confidential Information in strict confidence and shall not copy, duplicate or otherwise reproduce, in whole

_____ Employee's Initials

## CONFIDENTIALITY, NON-COMPETE
## AND NON-SOLICITATION AGREEMENT

or in part, such Confidential Information, except as necessary for Employee to perform services for Employer.

ii. Use or generally benefit from such information, except during and for the purposes of Employee's employment with Employer and for the sole benefit of Employer. Specifically, and without limitation, Employee shall not utilize any of the Confidential Information for Employee's own benefit, or for the benefit of any subsequent employer or competitor of Employer.

b. Upon the termination of Employee's employment with Employer, or at the earlier request of Employer, Employee shall immediately surrender to Employer any and all memoranda, records, files or other documents and any other materials (including photocopies or other reproductions) relating to the Confidential Information. Employee shall return all tangible evidence of such Confidential Information, including, but not limited to, any notes, analyses, papers, lists, books, files, and computer-stored or generated information, including any information stored on any computer hard drive, diskettes, thumb/jump drives, or other format, to Employer upon demand from Employer or at the termination or expiration of employment with Employer.

c. Employee shall indemnify and hold Employer harmless from any loss, damage, expense, cost or liability arising out of any unauthorized use or disclosure of the Confidential Information by Employee.

4. **NON-COMPETITION**. Employee agrees that, during Employee's employment with Employer, and for a period of **two (2)** years from and after the termination or expiration (for any reason or no reason, with or without cause) of Employee's employment with Employer (collectively, the "Restricted Period"), Employee shall not compete against Employer, or accept employment or establish any business relationship (including a consulting relationship), direct or indirect, with any business which produces or sells products or services sold by the Employer or any Affiliate within an **eight (8) mile geographic radius** of any business office occupied by Employer or any Affiliate (the "Restricted Territory") during the Restricted Period.

a. Therefore, during the term of Employee's employment with Employer, and for the continuous **two (2)** year period immediately following the termination of Employee's employment with Employer (for any or no reason), Employee shall not, in the Restricted Territory, directly or indirectly:

i. interfere in any way with the Business of Employer or any Affiliate; or

_____ Employee's Initials

# CONFIDENTIALITY, NON-COMPETE
# AND NON-SOLICITATION AGREEMENT

    ii.  under any circumstances whatever, in any capacity, contact or otherwise solicit business of the type done by Employer or any of its Affiliates from any of the Company's prior or existing patients or referral sources or potential patients or referral sources  (i.e., those potential patients and referral sources on whom any agent or employee of Employer or any of its Affiliates has at any time called or contacted);

    iii.  take any action, directly or indirectly, under any circumstances or conditions whatever, to invest in, own, manage, operate, control, participate in, engage in, or be connected with, as an officer, director, employee, stockholder, partner, member, manager, advisor, principal, agent, consultant, investor, clerk, trustee, lender of money, or otherwise, in or to the business of any person or entity that engages in any business which provides any service sold by Employer or any Affiliate or any aspect thereof within the Restricted Territory.

b.  The parties hereto acknowledge that the covenants contained in this Agreement are reasonably necessary to protect Employer's legitimate business interests, including, but not limited to, the substantial customer relationships, trade secrets, valuable confidential business information, and client goodwill associated with the Business of Employer.

c.  Nothing contained in this Paragraph 4 shall restrict or prevent Employee from owning five percent (5%) or less of the stock or securities of a corporation or other entity whose stock or securities are listed on any national or local securities exchange or traded over-the-counter on a national or local securities exchange, if Employee has no other connection or relationship with the issuer of such stock or securities.

d.  Employee acknowledges that there exists a sufficient number of individuals and businesses providing services similar to the services Employee provides in the Restricted Territory, to provide for the public health, safety and welfare so that enforcement of the covenants contained herein will not adversely impact the availability of individuals or businesses providing such services in the Restricted Territory. Employee has acquired specialized knowledge with regard to the customers, processes, and activities of the businesses conducted by Employer. During the course of Employee's employment with Employer, Employer will be sharing confidential information with Employee.  Employer has incurred and will continue to incur significant expense in developing the Confidential Information (defined above) and in training Employee.  Employee acknowledges the existence of the following legitimate business interests justifying the restrictive covenants

_____ Employee's Initials

## CONFIDENTIALITY, NON-COMPETE
## AND NON-SOLICITATION AGREEMENT

contained in this Agreement: (a) the protection of trade secrets, as defined in Section 688.002(4), Florida Statutes; (b) the protection of valuable confidential business information that otherwise does not qualify as trade secrets; (c) the protection of substantial relationships with specific prospective and existing customers; and (d) the protection of customer goodwill associated with (i) Employer's ongoing business, by way of trade name, trademark, service mark, and "trade dress"; (ii) the specific geographic location of Employer, as Employer is expanding its operations; and (iii) the specific marketing or trade area of Employer.

e.  "Affiliate" means with respect to Employer, (i) any individual or entity that directly or through one or more intermediaries controls or is controlled by or is under common control with Employer or (ii) any individual or entity who is a general partner, member, managing director, manager, officer, director or principal of any individual or entity described in (i) above.  As used in this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an individual or entity, whether through ownership of voting securities, by contract or otherwise.

5. **NON-SOLICITATION**.  Employee agrees that, during the Restricted Period, Employee shall not:

a.  Directly or indirectly engage, hire, employ, entice away or solicit any employee of Employer, or of any subsidiary or Affiliate of Employer, or otherwise induce or attempt to induce any employee of Employer or any of the subsidiaries or Affiliates to leave the employment of Employer or any subsidiary or Affiliate or alter the employment relationship of any employee with Employer or any subsidiary or Affiliate; or

b.  Directly or indirectly attempt to solicit any client/patient or referral source of Employer, or any client, patient or referral source of any subsidiary or Affiliate of Employer, or directly or indirectly interfere with Employer's relationship, or any subsidiary's or Affiliate's relationships, with any clients, patients or referral sources or prospective or potential clients, patients or referral sources with whom Employee communicated or had a relationship; or

c.  Accept the business of or provide services for (directly or indirectly) any client, patient or referral source or prospective or potential client, patient or referral source of Employer or any Affiliate with whom Employee communicated or had a relationship.

_____ Employee's Initials

## CONFIDENTIALITY, NON-COMPETE
## AND NON-SOLICITATION AGREEMENT

6. **TOLLING**.  The time restrictions applicable to Paragraphs 14 and 5 shall be tolled during the period of any breach by Employee of this Agreement.

7. **REMEDIES FOR BREACH OF RESTRICTIONS**.   Employer and Employee acknowledge that the remedies at law for any breach of this Agreement shall be inadequate, and that Employer shall be entitled to injunctive relief without notice to Employee, and that such injunctive relief shall not be exclusive, but shall be in addition to any rights or remedies Employer or its successors may have for such breach.  Employer and Employee recognize and agree that damages in such event are difficult to ascertain, though great and irreparable, and that this Agreement with respect to damages shall in no event prevent Employer from obtaining injunctive relief.  Employee acknowledges that (i) Employer would be irreparably harmed as a result of a breach by Employee of any provision of this Agreement, (ii) no amount of money would adequately compensate Employer for such harm, and (iii) it would be difficult, if not impossible, to calculate the monetary damages which might accrue to Employer as a result of such breach.  Employee therefore agrees that, in the event of any breach or contemplated breach of the terms or provisions of this Agreement, Employer shall be entitled to obtain an injunction or similar equitable relief against Employee from any court of competent jurisdiction in order to enforce the provisions hereof.  Notwithstanding the foregoing, Employer shall also be entitled to obtain monetary damages to the extent calculable as a result of the breach by Employee of the provisions of this Agreement.  Employee shall not assert as a defense that the harm to Employer is not irreparable. This provision shall not preclude Employer from seeking damages from Employee, as well as injunctive relief, and no defense will be allowed to the effect that the remedy of damages is inconsistent with the remedy of injunction.   In the event Employee shall breach this Agreement, the running of the period of the restrictions set for in this Agreement shall be tolled during the continuation of any such breach or breaches and the running of the period of such restrictions shall continue or commence again only upon compliance by Employee with the terms of this Agreement.

8. **INVALID PROVISION**.  In the event any provision of this Agreement should be or become invalid or unenforceable such invalidity or unenforceability shall not affect the validity and enforceability of any other provision of this Agreement.  Similarly, if the scope of any restriction or covenant contained herein should be or become too broad or extensive to permit enforcement thereof to its full extent then the court is specifically authorized by the parties to enforce any such restriction or covenant to the maximum extent permitted by law and Employee hereby consents and agrees that the scope of any such restriction or covenant may be modified accordingly in any judicial proceeding brought to enforce such restriction or covenant.  Thus, if a court of competent jurisdiction determines any provisions of this Agreement to be unenforceable because of its duration, geographic scope or

_____ Employee's Initials

# CONFIDENTIALITY, NON-COMPETE
# AND NON-SOLICITATION AGREEMENT

otherwise such court may amend the provisions of this Agreement to be enforceable.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provisions of this Agreement.  If all or any portion of a covenant in this Agreement is held unreasonable or unenforceable by a court or agency having valid jurisdiction in proceedings to which the Employee is a party, Employee expressly agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law as if the resulting covenant were separately stated in and made a part of this Agreement.  The existence of any claim or cause of action that Employee may have against Employer shall not constitute a defense to enforcement of any part of this Agreement by Employer.  All restrictions and covenants in this Agreement shall survive the termination or expiration of Employee's employment with Employer.

**ATTORNEY'S FEES AND COSTS**.  In the event a dispute arises between the parties under this Agreement and suit is instituted the prevailing party shall be entitled to recover his/her/its costs, attorney and paralegal fees from the non-prevailing party, including any pre-suit, investigative and appellate costs, attorney and paralegal fees.

9. **INTERPRETATION OF AGREEMENT**.  This Agreement has been brought about by virtue of the negotiations of both Employer and Employee.  Thus, should it ever become necessary to construe or interpret the terms and conditions of this Agreement, it shall be done without giving any consideration as to which of the parties may have drafted this Agreement.

10. **APPLICABLE LAW AND VENUE**.  This Agreement shall be interpreted under and governed by the laws of the State of Florida, notwithstanding any "conflict of law," or other doctrine to the contrary.  The exclusive venue of any action brought under this Agreement shall be **Orange County**, Florida and the parties agree to the exclusive personal jurisdiction of those courts.

11. **AMENDMENTS OR MODIFICATIONS**.  No amendments or modifications to this Agreement shall be binding on any of the parties, unless such amendment or modification is in writing and executed by all of the parties to this Agreement, except for modification by a court or agency pursuant to Section 9 of this Agreement.  No term, provision, or clause of this Agreement shall be deemed waived and no breach excused, unless such waiver or consent shall be in writing and executed by Employee and Employer.

12. **SUCCESSORS AND ASSIGNS**.  This Agreement shall be binding upon and inure to the benefit of Employer's successors and assigns, parents, subsidiaries, and Affiliates and may be enforceable by Employer's successors and assigns, parents, subsidiaries, and Affiliates.

_____ Employee's Initials

# CONFIDENTIALITY, NON-COMPETE
# AND NON-SOLICITATION AGREEMENT

Each and every reference to "Employer" in this Agreement shall be construed as including Employer's successors and assigns.

13. **<u>SURVIVING PROVISIONS</u>**.  All of the provisions of this Agreement, including, but not limited to, the restrictions and remedies, survive the termination or expiration of Employee's employment, irrespective of the grounds or reasons for such termination, including termination by Employer with or without notice or cause.

14. **<u>REASONABLENESS</u>**.  Employee acknowledges that Employee's employment and the restrictions hereby imposed are fair and reasonable and are reasonably required for the protection of the legitimate business interests of Employer.  Employee has voluntarily and knowingly entered into this Agreement and agrees that the restrictions of this Agreement will not prevent Employee from finding suitable employment should Employee's employment terminate for whatever reason.

15. **<u>DISCLOSURE OF AGREEMENT</u>**.  Employee shall, and Employer may, disclose this Agreement and its terms to any future or prospective employer of Employee and to any client, customer, or prospective client or customer of Employer, Employee, or future employer of Employee.

16. **<u>NOTICE</u>**.  If, at any time, Employee believes that for any reason Employee is no longer bound by this Agreement, Employee must notify Employer in writing within 30 days of the circumstance or event which forms the basis for such belief.  Such notice shall state with particularity the circumstance or event that forms the basis for Employee's belief.  Failure to strictly comply with this notice requirement on a timely basis shall serve as a waiver of Employee's contention that Employee is no longer bound by this Agreement.  After receipt of such notice, Employer shall have 30 days to remedy the circumstance or event.  If Employer remedies the circumstance or event, this shall serve as a waiver of Employee's contention that Employee is no longer bound by this Agreement.  Any effort by Employer to remedy the circumstance or event shall in no way be construed as any sort of admission that the circumstance or event relieves Employee of Employee's obligations under the Agreement.  Any notice to Employer shall be delivered by U.S. Mail, postage prepaid, return receipt requested, to the following address:

Integrative Physical Medicine Services and Staffing, LLC
425 Alexandria Blvd.
Suite 1010
Oviedo, FL 32765

_____ Employee's Initials

## CONFIDENTIALITY, NON-COMPETE
## AND NON-SOLICITATION AGREEMENT

Any and all other notices or other communications provided for herein shall be given in writing and shall be hand delivered or sent by United States mail, postage prepaid, registered or certified, return receipt requested, addressed as follows:

If to the Employer:

Integrative Physical Medicine Services and Staffing, LLC
425 Alexandria Blvd.
Suite 1010
Oviedo, FL 32765
Attn: Marc Ott, President

If to Employee:

provided, however, that any party may, from time to time, give notice to the other party of some other address to which notices or other communications to such party shall be sent, in which event, notices or other communications to such party shall be sent to such address. Any notice or other communication shall be deemed to have been given and received hereunder as of the date the same is actually hand delivered or, if mailed, when deposited in the United States mail, postage prepaid, registered or certified, return receipt requested.

17. **COMPLETE AGREEMENT**.   This Agreement represents the complete agreement between Employee and Employer regarding the subject matter of this Agreement. Employee acknowledges and agrees that no representation, promise, or agreement regarding the subject matter of this Agreement has been made to or with Employee that is not set forth in this Agreement.  Any representations or agreements regarding the subject matter of this Agreement not explicitly included in this Agreement are considered waived and unenforceable.  Any previous agreements between Employer and Employee regarding the subject matter of this Agreement are hereby superseded by execution of this Agreement, and shall be devoid of any continuing force or effect.  This Agreement is in no way dependent upon the performance of any other contract or agreement that may have been or may be entered into between Employee and Employer, and the breach or alleged breach of any other contract or agreement is no defense to enforcement of this Agreement.

18. **ACKNOWLEDGEMENT**.   Employee acknowledges that Employee has read this Agreement in full and completely understands all of its terms and obligations and enters into this Agreement freely and voluntarily.

_____ Employee's Initials

# CONFIDENTIALITY, NON-COMPETE
# AND NON-SOLICITATION AGREEMENT

19. **NON-REPRESENTATION**.  Employee has not received from Employer's counsel, Forster, Boughman & Lefkowitz, any legal opinion, tax or otherwise, nor has Employee relied on any statements made by Employer's counsel in entering into this Agreement or the transactions contemplated by this Agreement.  Employee acknowledges that Employer's counsel, Forster, Boughman & Lefkowitz, does not therefore represent his or her individual interest regarding this Agreement or any associated matter.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the date set forth above.  Signed and delivered in the presence of:

WITNESSES:                                      INTEGRATIVE PHYSICAL MEDICINE
                                                SERVICES & STAFFING, LLC


_____                 By:_____
Print Name:_____                 Print name:_____
                                                Its:_____


_____                 Date:_____
Print Name:_____


_____                 _____
Print Name:_____                 Employee Signature


_____                 _____
Print Name:_____                 Employee Name

                                                Date:_____


_____ Employee's Initials



# NON-DISCLOSURE AGREEMENT (NDA)

This Non-Disclosure Agreement, hereinafter known as the "Agreement", created on the 21ST day of July, 2020 is by and between Complete Care Centers LLC and it's affiliates, hereinafter known as "Company", and Alexandra Petit _____, hereinafter known as "Employee", and collectively known as the "Parties". This Non-Disclosure Agreement is supplemental to any prior agreements and any breach of this agreement is subject to disciplinary action to include, but not limited to termination of employment.

WHEREAS, this Agreement is created for the purpose of preventing the unauthorized disclosure of any and all confidential and proprietary information. Additionally, this agreement is intended to prevent any disclosures of company information as it may relate to allegations or lawsuits brought against the company by any individual or corporation. The Parties agree as follows:

This Agreement shall be Unilateral, whereas, the Company shall have sole ownership of the Confidential Information with Employee being prohibited from disclosing confidential and/or proprietary information that is known by the employee or may be released by the Company.

For the purposes of this Agreement, the term "Confidential Information" shall include, but not be limited to, documents, records, information and data (whether verbal, electronic or written), schedules, product plans, marketing plans, technical procedures, methodologies and other Company information, relating to the Company's business, assets, operations or contracts regardless of whether such Confidential Information has been expressly designated as confidential or proprietary. Confidential Information also includes any and all, work products, studies and other material prepared by or in the possession or control of the Parties, which contain, include, refer to or otherwise reflect or are generated from any Confidential Information.

The obligations of the Parties shall always be to hold and maintain the Confidential Information in the strictest of confidence. If requested, employee shall be bound to return any and all materials to the Company within 3 days.

Employee's duty to hold the Confidential Information in confidence shall remain in effect until the Company releases such Parties from this Agreement.

If a court finds that any provision of this Agreement is invalid or unenforceable, the remainder of this Agreement shall be interpreted so as best to affect the intent of the Parties.

The Parties acknowledge and agree that due to the unique and sensitive nature of the Confidential Information, any breach of this Agreement would cause irreparable harm for which damages and/or *equitable* relief may be sought. The harmed Party in this Agreement shall be entitled to all remedies available at law.

This Agreement shall be governed under the laws in the State of Florida.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date written below.

**Company Signature** | cl_kclark5f3136508388b_360256 — *Kylie Clark* | Date  08/17/2020

Print Name  Kylie Clark

**Employee Signature** | ee_A0735e60003b0a175_360256 — [signature] | Date  08/14/2020

Print Name  Alexandra Petit