# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

Case No: 6:20-cv-1240-Orl-WWB-EJK

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and STATE
FARM FIRE AND CASUALTY
COMPANY,

       Plaintiffs,

vs.

COMPLETE CARE CENTERS, LLC,
F/K/A INTEGRATIVE PHYSICAL
MEDICINE HOLDING, LLC,
MARC G. OTT, and BRET G.
SCHEUPLEIN,

       Defendants.

_____/

**PLAINTIFFS STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY AND STATE FARM FIRE AND CASUALTY COMPANY'S
MEMORANDUM OF LAW REGARDING DEFENDANT COMPLETE
<u>CARE CENTERS, LLC'S CLAIM OF PRIVILEGE</u>**

Plaintiffs State Farm Mutual Automobile Insurance Company and State
Farm Fire and Casualty Company ("Plaintiffs"), by and through undersigned
counsel, and pursuant to the Court's April 9, 2021 Order [ECF No. 107], submit
their Memorandum of Law regarding Defendant Complete Care Centers, LLC's
("Complete Care") claim of privilege, and state:

1

## INTRODUCTION

The only issue pending with the Court is whether the attorney-client privilege applies to a training video that Complete Care created for its employees and independent contractors that reflects instructions regarding the provision of health care services for patients who are represented by the law firm Morgan & Morgan (the "Morgan & Morgan Patient Guidelines"). The attorney-client privilege only applies to a communication between lawyer and client. *See* Fla. Stat. § 90.502. The Morgan & Morgan Patient Guidelines, however, is not a communication between lawyer and client because Complete Care is not a client of Morgan & Morgan and the Morgan & Morgan Patient Guidelines is a training video created by Complete Care.

This is precisely why Complete Care's reliance on *Worley v. Cent. Fla. Young Men's Christian Ass'n, Inc.*, 228 So. 3d 18 (Fla. 2017) is misplaced. *Worley* involved the narrow issue of whether the attorney-client privilege protects a plaintiff in a personal injury case from disclosing whether he or she was referred to a treating physician by counsel. *See Worley*, 228 So. 3d at 20. The Florida Supreme Court answered in the affirmative and held "whether the plaintiff's attorney requested that the client see a certain doctor requires the plaintiff to disclose a part of a communication that was held between the plaintiff and attorney[.]" *Worley*, 228 So. 3d at 25.

The facts presented here are the polar opposite of those in *Worley*. *Worley* involved a personal injury claim, whereas here the Plaintiffs are seeking to recover

more than $13.7 million paid on unlawful and fraudulently submitted insurance claims presented by Defendants. Nor are Plaintiffs seeking to discover who referred the patients whose claims are at issue in this case to Complete Care. Rather, Plaintiffs seek to discover a training video utilized to treat patients. Moreover, Plaintiffs are not seeking this the video to establish the collateral issue of bias of the testifying treating provider, which is why the discovery was sought in *Worley*. Instead, Plaintiffs seek this video to determine whether Defendants treated patients differently if they were represented by Morgan & Morgan in order to maximize the recovery of insurance benefits from Plaintiffs. As this Court is aware, the predetermined treatment of Complete Care's patients is a central issue in this case and the potentially different way those that were represented by a particular law firm were treated is clearly discoverable.

For the reasons set forth below, the Court should overrule Defendants' claim of privileged and order Complete Care to produce the Morgan & Morgan Patient Guidelines.

## PROCEDURAL HISTORY

On September 4, 2020, Plaintiffs served the First Request for Production on Complete Care, a copy of which is attached as **Exhibit A**. Request No. 4 sought the following documents from Complete Care: "[a]ll handbooks, manuals, instructions, guidelines, policies, procedures, conferences, sessions or training documents provided to employees and/or independent contractors of the Complete Care Entities." *Id*. Complete Care withheld the Morgan & Morgan

Patient Guidelines, a training video created by Complete Care for its employees and independent contractors, under the claim of the attorney-client privilege. *See* **Exhibit B** (Complete Care's March 4, 2021 Update Privilege Log).

On February 23, 2021 and March 4, 2021, the Parties held two teleconferences to discuss Complete Care's claims of privilege. Despite these efforts, the Parties could not reach an agreement regarding the documents withheld by Defendants under a claim of privilege, including the Morgan & Morgan Patient Guidelines. Defendants failed to move for a protective order as required by the Court's Standing Order on Privilege within 14 days of the Parties' March 4, 2021 teleconference.[1] This necessitated the filing of Plaintiffs' Short Form Motion to Compel the Production of Documents from Complete Care [ECF No. 96] (the "Motion to Compel"), which was filed on March 31, 2021 and sought to compel the production of the Morgan & Morgan Patient Guidelines.

Following a hearing on April 8, 2021, the Court took the Motion to Compel under advisement as to Complete Care's claim of privilege with regard to the Morgan & Morgan Patient Guidelines and directed:

---

[1] Complete Care's failure to move for a protective order as required by the Standing Order on Privilege, to which "[t]he Court expects strict adherence," undermines any claim Complete Care established a *prima* facie case to support its claim of privilege, a burden which Complete Care carries. *See Robles v. GEICO Indem. Co.*, No. 8:19-CV-1293-T-60AAS, 2020 WL 3895475, at *4 (M.D. Fla. July 10, 2020) (recognizing "[t]he burden of establishing the attorney-client privilege rests on the party claiming it."). Had Complete Care complied with the Standing Order on Privilege, it would have been required to submit "a memorandum of law discussing the elements of each privilege asserted" and "an appendix containing 'affidavits, deposition testimony, other sworn statements or other evidence' upon which [Complete Care] relies to support each element of each asserted privilege in dispute."

- Complete Care to provide the SF Plaintiffs with an updated privilege log with a more complete description of the Morgan & Morgan Patient Guidelines on or before April 12, 2021.[2]

- Complete Care to submit the Morgan & Morgan Patient Guidelines to chambers for an *in camera* review on or before April 22, 201.

- Plaintiff to submit briefing addressing Complete Care's claim of privilege, including the following cases raised by Complete Care during the April 8, 2021 hearing: *Worley v. Cent. Fla. Young Men's Christian Ass'n, Inc.*, 228 So. 3d 18 (Fla. 2017); *Bellezza v. Menendez*, 273 So. 3d 11 (Fla. 4th DCA 2019); *Gulfcoast Spine Inst., LLC v. Walker*, No. 2D19-4220, 2021 WL 403905 (Fla. 2d DCA Feb. 5, 2021); *Orthopedic Ctr. of S. Fla. v. Sode*, 274 So. 3d 1127 (Fla. 4th DCA 2019); and *Angeles-Delgado v. Benitez*, 300 So. 3d 263 (Fla. 3d DCA 2019), *review dismissed sub nom. Angeles-Delgado v. Costa Benitez*, No. SC19-1600, 2020 WL 710297 (Fla. Feb. 12, 2020).

*See* [ECF No. 107] at ¶ 4(c).

## MEMORANDUM OF LAW

### 1. *Worley* Has No Application to This Case Because Plaintiffs Seek Vastly Different Discovery Under Vastly Different Circumstances

*Worley* has no application to this case because the facts presented in *Worley*, and the discovery sought, are vastly different than what is presented here. In *Worley*, the plaintiff filed a lawsuit after falling in the parking lot at the Central Florida Young Men's Christian Association, Inc. ("YMCA"). *Worley*, 228 So. 3d at 20. The YMCA suspected there was a "cozy agreement" between the plaintiff's law firm—Morgan & Morgan—and her treating physician—Sea Spine Orthopedic Institute, Underwood Surgery Center, and Sanctuary Surgical & Anesthesia (collectively, "Sea Spine")—due to the amount of the plaintiff's medical bills. *Id.* at

---

[2] A copy of the Privilege Log produced by Complete Care on April 12, 2021 is attached as **Exhibit C**.

20-21. In discovery, YMCA attempted to discover the financial relationship between Morgan & Morgan and Sea Spine Orthopedic Institute, both of whom were non-parties. *Id.* at 20. The only relevance this discovery had to the case was the collateral issue of bias of the plaintiff's treating providers.

The trial court sustained the plaintiff's objection to a question asked during her deposition regarding whether she was referred to Sea Spine by Morgan & Morgan. *Id.* at *21. However, the trial court ordered the plaintiff to produce documents regarding the financial relationship between Sea Spine and & Morgan & Morgan that were sought in YMCA's supplemental request to produce: 1) agreements between Morgan & Morgan and Sea Spine regarding billing for patients or client referrals; and 2) the names of all cases where Morgan & Morgan referred a client to Sea Spine. *Id.*

The plaintiff filed a petition for writ of certiorari with the Fifth District Court of Appeal ("Fifth District"). *Id.* The Fifth District denied the petition and held "that it was appropriate for YMCA to ask [the plaintiff] if she was referred to the relevant treating physicians by her counsel or her counsel's firm" and that it "found no error regarding the trial court's order for [the plaintiff] to comply with YMCA's supplemental request to produce." *Id.* at 22. The Fifth District also certified conflict with *Burt v. Government Employees Insurance Co.*, 603 So. 2d 125 (Fla. 2d DCA 1992), "to the extent that it holds that the disclosure of a referral of a client by an attorney to a healthcare provider is always protected by attorney-client privilege." *Id.*

6

The Florida Supreme Court quashed the decision of the Fifth District and approved the decision of the Second District Court of Appeal ("Second District") in *Burt*, holding the question of whether attorney referred client to a particular physician was protected by the attorney-client privilege. *Id.* at 20. The Florida Supreme Court rejected YMCA's argument that a lawyer's referral of a client to a treating physician is an underlying fact and not a communication.[3] *Id.* at 25. The Florida Supreme Court reasoned:

> [W]hether the plaintiff's attorney requested that the client see a certain doctor requires the plaintiff to disclose a part of a communication that was held between the plaintiff and attorney, and we resist any attempts to separate the contents of communications to distinguish "facts" from privileged information.

*Id.*

Next, the Florida Supreme Court held YMCA's supplemental request to produce, which was directed to Morgan & Morgan in an effort to establish the existence of a referral relationship between Morgan & Morgan and Sea Spine, was unduly burdensome. *Id.* at 25. In reaching this decision, the Florida Supreme Court balanced the damages sought in the case—$66,000—with the cost of compliance with the Court's order—200 hours of attorney review at a cost of $94,010. *Id.* At 25-26.

The Florida Supreme Court also held the financial relationship between a plaintiff's law firm and the plaintiff's treating physician is not discoverable. *See id.*

---

[3] Justice Polston in his Dissenting Opinion, however, found a lawyer's referral of a client to a treating medical provider is not protected by the attorney client privilege because the referral "is for the purpose of the client's medical care, not in furtherance of legal services." *Id.* at 26-27.

at 22-24. The Florida Supreme Court did *not* hold the financial relationship was privileged. Rather, the Florida Supreme Court held that district courts which allowed this type of discovery misapplied *Allstate Insurance Company v. Boecher*, 733 So. 2d 993 (Fla. 1999), which held a party may obtain discovery from an opposing party regarding the opposing party's relationship with an expert. *Id.* at 22-23. The Florida Supreme Court found "the relationship between a law firm and a plaintiff's treating physician is not analogous to the relationship between a party and its retained expert." The Florida Supreme Court also found discovery of a financial relationship between a plaintiff's law firm and the plaintiff's treating physician would invade the attorney-client privilege because courts which have allowed this type of discovery require a threshold showing of a referral relationship. *Id.* at 24.

As discussed below, *Worley* has no application to this case for three primary reasons: 1) the discovery sought by Plaintiffs is vastly different than the discovery sought in *Worley*; 2) Complete Care does not have standing to raise a claim of privilege; and 3) the crime fraud exception to the attorney-client privilege bars any claim of privilege. It is well settled that "[b]ecause application of the attorney-client privilege obstructs the truth-seeking process, it must be narrowly construed.'" *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1233 (S.D. Fla. 2018) (*quoting MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013)). Thus, the Court should not expand the holding in *Worley* to apply to the vastly different circumstances that are present here.

### a. The discovery sought by Plaintiffs here is vastly different than the discovery sought by the defendant in *Worley*

The discovery sought by Plaintiffs here is entirely different than the discovery sought by the defendant in *Worley*. Plaintiffs have not asked a patient of Complete Care to disclose whether he or she was referred there by Morgan & Morgan, which was the **only issue** presented in *Worley*. Rather, Plaintiffs seek the production of training materials that **Complete Care created** and provided to its employees and independent contractors, such as the Morgan & Morgan Patient Guidelines. It is undisputed Complete Care is not a client of Morgan & Morgan. Thus, the Morgan & Morgan Patient Guidelines do not reflect a communication between a lawyer and client.

Moreover, as United States District Court Magistrate Judge Amanda Sansone recently recognized, the attorney-client privilege only covers communications made in furtherance of legal services:[4]

> Under Florida law, "a client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." Fla. Stat. § 90.502(2). In other words, the privilege applies to "confidential communications made in the rendition of legal services to the client." *S. Bell Tel. & Tel. Co. v. Deason*, 632 So.2d 1377, 1380 (Fla. 1994) (*citing* Fla. Stat. § 90.502).

*Robles*, 2020 WL 3895475 at *4.

---

[4] For instance, courts have found a settlement statement prepared by a law firm and sent to its client is not a privileged communication. *See*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, No. 1:17-CV-20028-KMM, Discovery Order, ECF No. 196 (S.D. Fla. Dec. 6, 2017); *State Farm Mut. Auto. Ins. Co. v. Kugler*, Case No. 11-80051, Omnibus Discovery Order, ECF No. 1008 (S.D. Fla. September 17, 2012).

The Morgan & Morgan Patient Guidelines purportedly reflect instructions communicated to Complete Care by Morgan & Morgan regarding how health care services are to be administered at the clinic. Thus, the communications which led to the creation of the Morgan & Morgan Patient Guidelines were made in furtherance of medical care, not legal services. Moreover, the Morgan & Morgan Patient Guidelines appear to be general guidelines, and Complete Care has failed to offer any evidence the video relates to any particular patient of Morgan & Morgan. Thus, unlike in *Worley*, there is no "client" who "has a privilege to refuse to disclose, and to prevent any other person from disclosing" the Morgan & Morgan Patient Guidelines. *See* Fla. Stat. § 90.502(2).

Also in contrast to *Worley*, Plaintiffs do not seek *Boecher* discovery regarding the extent of the relationship between Morgan & Morgan and Complete Care.[5] Significantly, Plaintiffs seek Complete Care's training materials, and there is no indication the Morgan & Morgan Patient Guidelines otherwise reflect the number of patients who have been referred to Complete Care by Morgan & Morgan. Nor is the *Boecher* discovery at issue in *Worley* applicable here. This is not a personal injury case and Morgan & Morgan does not represent Complete Care in this action. Rather, Plaintiffs seek the Morgan & Morgan Patient Guidelines because it is relevant to a central issue in this case—Defendants' predetermined

---

[5] Although Plaintiffs have not propounded *Boecher* discovery, Defendants' privilege log provides that the Morgan & Morgan Patient Guidelines addresses letters of protection. *See* **Exhibit C** at DFS RESP 0042619. *Worley* expressly permits discovery regarding the treating physician's use of letters of protection. *See Worley*, 228 So. 3d at 23-24.

treatment of patients, which was designed and carried out to enrich Defendants by exploiting patients' No-Fault Benefits. *See* [ECF No. 1] at ¶¶ 8-10 and 61-130. If the Morgan & Morgan Patient Guidelines reflect preset instructions that control the provision of health care services for patients who are represented by Morgan & Morgan then the video is clearly discoverable because it undermines any claim Complete Care administered treatment based on the individual needs of each patient. Thus, Plaintiffs are not required to make a threshold showing of a referral relationship, which the Court in *Worley* found was privileged, in order to establish its entitlement to the Morgan & Morgan Patient Guidelines.

Finally, the Court in *Worley* also found the discovery regarding the financial relationship between Morgan & Morgan and Sea Spine was unduly burdensome because the cost of compliance well exceeded the damages sought by the plaintiff in the case. *See Worley*, 228 So. 3d at 25-26. Here, in contrast, Plaintiffs seek the production of a single video that is known to Complete Care and disclosed in its privilege log. There simply is no burden in producing the Morgan & Morgan Patient Guidelines.

### b. Complete Care does not have standing to raise a claim of privilege

In *Worley,* the claim of privilege was raised by the plaintiff, a client of Morgan & Morgan. *See Worley*, 228 So. 3d at 20-21. Here, the claim of privilege was raised by Complete Care. Complete Care, however, does not have standing to claim privilege. Florida Statutes § 90.502 expressly limits who may claim the attorney-privilege to five discrete categories of persons:

The privilege may be claimed by:
> (a) The client.
> (b) A guardian or conservator of the client.
> (c) The personal representative of a deceased client.
> (d) A successor, assignee, trustee in dissolution, or any similar representative of an organization, corporation, or association or other entity, either public or private, whether or not in existence.
> (e) The lawyer, but only on behalf of the client. The lawyer's authority to claim the privilege is presumed in the absence of contrary evidence.

Fla. Stat. § 90.502(3).

Complete Care does not contend it is a client of Morgan & Morgan, and Complete Care is certainly not a law firm. *See* Fla. Stat. § 90.502(3)(a) and (e). Nor has Complete Care offered any evidence that it is guardian, conservator, or personal representative of a client of Morgan & Morgan. *See* Fla. Stat. § 90.502(3)(b)-(c). Finally, Florida Statutes § 90.502(3)(d) does not provide a basis for standing because it only applies to a client who is a "organization, corporation, or association or other entity." Significantly, Florida Statutes § 90.502(3) does not include a parallel provision for clients who are individuals, such as the clients of Morgan & Morgan pursuing personal injury claims.

### c.  The crime fraud exception bars any claim of privilege

Finally, in *Worley,* the Court found none of the exceptions to the attorney-client privilege applied. *See Worley*, 228 So. 3d at 25. Here, in contrast, the crime fraud exception to the attorney-client privilege bars any claim of privilege:

> (4) There is no lawyer-client privilege under this section when:
> (a) The services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud.

Fla. Stat. § 90.502(4)(a).

Plaintiffs allege Defendants submitted claims to Plaintiffs that were fraudulent, and thus unlawful and non-compensable because Defendants subjected patients to services that were performed pursuant to the Predetermined Treatment Plan. *See* [ECF No. 1] at ¶¶ 1, 8-12, 61-130. The Predetermined Treatment Plan was designed and carried out to enrich Defendants by exploiting patients' insurance benefits, not because such served were medically necessary. *Id.* at 8-9. If Morgan & Morgan communicated instructions that predetermined or even suggested how medical services would be administered by Complete Care to its clients in a manner that was fraudulent or unlawful then no privilege would apply as it enabled or aided Defendants' scheme. *See* Fla. Stat. § 90.502(4)(a).

### 2. *Bellezza* Is Inapposite for the Same Reasons as *Worley*

*Bellezza* is inapposite here for the same reasons as *Worley*. Indeed, *Bellezza* involved a straightforward application of *Worley* in a case that presented facts which were virtually identical to *Worley*. In *Bellezza*, the plaintiff filed a personal injury action following an automobile accident. The defendants sought to discover the financial relationship between the plaintiff's attorney and his treating physicians. *See Bellezza v. Menendez*, 273 So. 3d at 12. Before the Florida Supreme Court issued its decision in *Worley*, the trial court ordered the plaintiff to produce documents regarding the financial relationship between his attorney and various treating physicians, including payments by the plaintiff's attorney's firm to the treating physicians over five years and letters of protection between the same. *Id.*

at * 15. Moreover, at trial, defendants were permitted to ask the plaintiff who referred him to his treating chiropractor and orthopedist. *See id*. at 13. The plaintiff did not remember who referred him to either doctor, but his cousin testified that the plaintiff told him his attorney referred him to his treating physicians. *Id*.

Following trial, the plaintiff appealed an adverse final judgement, arguing the trial court erred in admitting attorney-client privileged evidence.[6] *Id*. at 12. The Fourth District Court of Appeal ("Fourth District") reversed the trial court and remanded for a new trial. The Fourth District held that post-*Worley*, the discovery sought by the defendants was "no longer permitted as it violates attorney-client privilege." *Id*. at *15.

*Bellezza* is entirely distinguishable from this case. Plaintiffs do not seek to discover whether any particular patient of Complete Care was referred to it by the patient's attorney, but rather seek training documents that Complete Care provided to employees and independent contractors. Nor do Plaintiffs seek *Boecher* discovery, which as the Florida Supreme Court recognized in *Worley* requires a threshold showing of a referral relationship between the law firm and the treating physician. *See Worley*, 228 So. 3d at 22.

### 3. *Gulfcoast Spine Institute, Orthopedic Center of South Florida*, and *Angeles-Delgado* Did Not Involve a Claim of Attorney-Client Privilege and Thus, Have No Application to This Case

---

[6] The plaintiff also asserted the trial court erred in excluding evidence that the defendants' law firm also referred clients to the plaintiff's treating physicians. *Id*. at 12. The Fifth District found this issue was moot. *Id*.

*Gulfcoast Spine Institute*, *Orthopedic Center of South Florida*, and *Angeles-Delgado* have no application because the discovery in these cases were not subject to a claim of the attorney-client privilege, which is the *only* issue pending with the Court here. As discussed below:

- In *Gulfcoast Spine Institute,* the non-party opposing discovery asserted a claim of trade secret and confidential proprietary information. *Gulfcoast Spine Inst., LLC*, 2021 WL 403905 at*2.

- In *Orthopedic Center of South Florida*, the non-party opposing discovery asserted the discovery was prohibited by Florida Rule of Civil Procedure 1.280(b)(5)(A)(iii), which limits discovery from experts. *Orthopedic Ctr. of S. Fla.*, 274 So. 3d at 1129.

- In *Angeles-Delgado*, the defendants in an automobile negligence case asserted *Boecher* discovery (i.e., discovery regarding the opposing party's relationship with an expert) was prohibited by *Worley*. *Angeles-Delgado v. Benitez*, 300 So. 3d at 264.

### a. *Gulfcoast Spine Institute*

In *Gulfcoast Spine Institute*, which involved a personal injury action arising from an automobile accident, the defendant sought billing and financial information in discovery from three non-party medical providers who treated the plaintiff: Gulf Coast Spine Institute, LLC; BioSpine Institute, LLC; and Avion Anesthesia (collectively "BioSpine"):

> [The Defendant] sought any and all documentation reflecting BioSpine's methodology for determining its pricing; its methodology for using CPT codes; contracts it had reached with private insurers; its realization rates from different categories of patients; and its overhead costs for medical equipment, personnel, procedures, and facilities. Although some of the requests were limited to [the Plaintiff], many were not. For example, in addition to requesting all of her documentation, [the defendant] also sought documentation for all other patients who received the same procedures from BioSpine during any time from the prior three years.

15

*Gulfcoast Spine Inst., LLC*, 2021 WL 403905 at*1 (footnote omitted). BioSpine opposed the discovery on the grounds it sought trade secrets and confidential proprietary information. *Id*. at *2.

The trial court directed BioSpine to produce a redacted version of its contract with Blue Cross Blue Shield subject to a confidentiality agreement to be determined subsequently, BioSpine's overhead costs for the procedures performed on the plaintiff, BioSpine's realization rates from patients in litigation versus patients not in litigation, and BioSpine's methodology for setting charges for each CPT code involved in the plaintiff's treatment. *Id*. BioSpine then sought a writ of certiorari quashing the trial court's discovery order. *Id*. at *1.

The Second District granted the petition for a writ of certiorari and quashed the trial court's discovery order. *Id*. at *5. The Second District held the trial court departed from the essential requirements of law by ordering the production of trade secrets—an issue which was not in dispute—"without conducting a balancing test, making findings, or implementing protective measures as required by Florida law." *Id. Worley* was not cited in the Opinion.

### b. *Orthopedic Center of South Florida*

In *Orthopedic Center of South Florida*, the plaintiff brought an action to recover for injuries sustained in a bicycle accident. *Orthopedic Ctr. of S. Fla.*, 274 So. 3d at 1129. In discovery, the plaintiff served a subpoena duces tecum on Orthopedic Center of South Florida—the business entity under which the doctor who performed a compulsory medical exam of the plaintiff ran his practice—that

16

sought evidence of the doctor's potential bias, including the financial relationship between the practice and the defendant's insurance company and law firm. *Id.* Orthopedic Center of South Florida moved for a protective order and asserted most of what Plaintiff sought was not proper discovery from the examining doctor, who was an expert under Rule 1.280(b)(5)(A)(iii).[7] *Id.* The plaintiff contended the limits of *Elkins* and Rule 1.280(b)(5) do not apply to Orthopedic Center of South Florida because it is a corporation, which is not afforded the protections of an expert. *Id.* The trial court ordered Orthopedic Center of South Florida's representative to bring to the deposition "for reference purposes only" documents responsive to nine requests included in the subpoena duces tecum. *Id.* Orthopedic Center of South Florida then filed a petition for writ of certiorari and sought to quash the trial court's order. *Id.* at 1128.

The Fourth District granted the writ of certiorari relief and quashed the trial court's order for three reasons: 1) the protections from invasive discovery afforded to individual experts applies equally to the business entity with which the expert is affiliated; 2) the plaintiff used an inappropriate methodology for discovery; and 3) the proposed subpoena duces tecum sought unauthorized information. The only citation to *Worley* pertains to the Florida Supreme Court's recognition that it

---

[7] Rule 1.280(b)(5)(A)(iii) limits the discovery that may be obtained from an expert witness to four discrete categories of information and specifically provides "[a]n expert may be required to produce financial and business records only under the most un-usual or compelling circumstances[.]"

"adopted rule 1.280(b)(5), which limits discovery from experts who are obviously hired by one party." *Id.* at 1132 (*citing Worley*, 228 So. 3d at 22-23).

### c. *Angeles-Delgado*

*Angeles-Delgado* involved a personal injury action arising from an automobile accident. *See Angeles-Delgado v. Benitez*, 300 So. 3d at 263. Like, *Orthopedic Center of South Florida*, the plaintiff sought to obtain information about the financial relationships between the defendants' experts and the defendants' law firm and insurer. *Id.* The discovery was directed to defendants, but sought information in the possession of their experts, lawyers, and insurer, who were not parties. *Id.* at 263-64. The trial court denied the defendants' motion for protective order and granted the plaintiff's motion to compel. *Id.*

The defendants then filed a petition for certiorari and sought to quash the trial court's order. *Id.* at 263. The defendants argued the trial court's order was contrary to *Worley*, which they asserted made clear that *Boecher* discovery (i.e., discovery regarding the opposing party's relationship with an expert) does not apply to non-parties. *Id.* at 264. The Third District Court of Appeal ("Third District") rejected this argument, recognizing "*Worley* holds only that the attorney-client privilege bars compelled disclosure of whether the plaintiff's lawyer referred the plaintiff to a treating physician." *Id.* Thus, the Third District denied the petition for writ of certiorari. *Id.*

**CONCLUSION**

For the reasons stated above, the Court should overrule Complete Care's claim of attorney-client privilege and order Complete Care to produce the Morgan & Morgan Patient Guidelines.

Dated: April 22, 2021

Respectfully submitted,

By: */s/ David I. Spector*
    David I. Spector, **Trial Counsel**
    Fla. Bar No. 086540
    James J. Duffy
    Fla. Bar No. 0068662
    **HOLLAND & KNIGHT LLP**
    777 South Flagler Drive, Suite 1900
    West Palm Beach, Florida 33401
    Telephone: (561) 833-2000
    Facsimile: (561) 650-8399
    david.spector@hklaw.com
    james.duffy@hklaw.com

    *Attorneys for Plaintiffs*

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or Parties who are not authorized to receive electronically Notices of Electronic Filing.


*/s/ David I. Spector*
DAVID I. SPECTOR
Fla. Bar No. 086540

## SERVICE LIST

| | |
|---|---|
| BRUCE S. ROSENBERG<br>Rosenberg Law, PA<br>2835 NW Executive Center Drive<br>Suite 100<br>Boca Raton, FL 33431<br>rosenberg@rosenberglawpa.com<br><br>ALEXIS ROSENBERG<br>Rosenberg Law, P.A.<br>6950 Cypress Road, Suite 107<br>Plantation, FL 33317<br>(954) 790-6100<br><br>arosenberg@rosenberglawpa.com<br><br>*Attorneys for Complete Care Centers, LLC, f/k/a Integrative Physical Medicine Holding, LLC, Marc G. Ott, and Bret G. Scheuplein* | JASON NEIL GOLDMAN<br>Davis Goldman, PLLC<br>1441 Brickell Avenue, Suite 1400<br>Miami, FL 33131<br>305-800-6673<br>Fax: 954/713-2713<br>jgoldman@davisgoldman.com |

#83654984_v8