UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE AND CASUALTY
COMPANY,

                Plaintiffs,

v.                                                   Case No: 6:20-cv-1240-WWB-EJK

COMPLETE CARE CENTERS, LLC,
MARC G. OTT and BRET G.
SCHEUPLEIN,

                Defendants.
_____/

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss (Doc. 28) and Plaintiffs' Response in Opposition (Doc. 36). For the reasons stated herein, the Motion will be denied.

## I.    BACKGROUND

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, are insurance companies that offer personal injury protection coverage and medical payments coverage under their policies. (Doc. 1, ¶¶ 1, 16–17). Defendant Complete Care Centers, LLC ("**Care Centers**"), is a Florida limited liability company owned by Defendants Marc G. Ott and Bret G. Scheuplein. (*Id.* ¶¶ 20, 48). Ott and Scheuplein are licensed chiropractic physicians. (*Id.* ¶¶ 18–19).

Beginning in 2011, Ott and Scheuplein owned and operated, through Care Centers, seventeen Integrative Physical Medicine clinics in and around Central Florida.

(*Id.* ¶¶ 2, 47–48). These clinics provided chiropractic treatment, physical therapy, x-rays, and related services to patients suffering from neck or back pain as a result of an automobile accident. (*Id.* ¶¶ 2, 36, 47). In 2016, Ott and Scheuplein opened Central Florida Imaging—specializing in diagnostic imaging—and Interventional Associates—providing interventional pain management services and orthopedic consultations. (*Id.* ¶ 49). On December 15, 2019, Integrative Physical Medicine, Central Florida Imaging, and Interventional Associates merged into Care Centers. (*Id.* ¶ 3).

Plaintiffs allege that beginning in at least 2016, Defendants, through their various medical clinics, engaged in a systemic scheme to unlawfully refer patients from Integrative Physical Medicine to Central Florida Imaging and Interventional Associates, (*id.* ¶¶ 52–60), to increase the charges submitted to Plaintiffs for patient care, (*id.* ¶¶ 61–124), to not make a good faith effort to collect deductibles and copayments in contravention of Florida law, (*id.* ¶¶ 125–30), and to submit false, misleading, deceptive, or fraudulent bills to Plaintiffs for payment, (*id.* ¶¶ 131–39). As a result, Plaintiffs bring claims against Defendants for unjust enrichment (Counts I and VI), violations of the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**"), Fla. Stat. § 501.201 *et seq.* (Counts II, VII and VIII), violations of the Patient Self-Referral Act ("**FPSRA**"), Fla. Stat. § 456.053 (Count III), declaratory judgment (Counts IV and IX), and fraud (Count V). (*See generally id.*).

## II.   LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where a complaint alleges fraud or mistake, "a party must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.   DISCUSSION

Defendants move to dismiss each count of the Complaint for failure to state a claim. Plaintiffs argue that numerous courts have already considered and rejected most of the arguments raised by Defendants in their Motion and that the remaining arguments are without merit.

### A. Unjust Enrichment

With respect to Counts I and VI for unjust enrichment, Defendants first argue that Plaintiffs cannot state a claim because they have alleged the existence of a contract. Even assuming that the assignments of benefits constitute express contracts—Plaintiffs argue they do not—Defendants' argument is premature. Plaintiffs are entitled to plead their claims in the alternative unless, and until, an express contract is proven. *See Baptist Hosp. of Mia., Inc. v. Medica Healthcare Plans, Inc.*, 385 F. Supp. 3d 1289, 1293 (S.D. Fla. 2019). Here, even if the Court considers the assignments to be express contracts, they have only been alleged, not proven.

In the alternative, Defendants argue that they gave adequate consideration by providing services to Plaintiffs' insureds. However, Plaintiffs have sufficiently alleged that Defendants were not legally entitled to claim payment for the services rendered. Therefore, their services cannot constitute adequate consideration. *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) ("If an entity accepts and retains benefits that it is not legally entitled to receive in the first place, Florida law provides for a claim of unjust enrichment.").

Finally, Defendants Ott and Scheuplein argue that the claims must be dismissed as to them because all payments were made directly to Care Centers. Defendants' argument is conclusory and fails to cite any legal authority. Moreover, nearly identical arguments have been rejected by courts in this Circuit. *See State Farm Mut. Auto. Ins. Co. v. First Choice Care Chiropractic & Rehab. Ctr., Inc.*, No. 8:20-cv-330-T-60CPT, 2020 WL 5583516, at *2 (M.D. Fla. Aug. 17, 2020); *State Farm Mut. Auto. Ins. Co. v. Advantacare of Fla., LLC*, No. 6:19-cv-1837-Orl-41LRH, 2020 WL 2630226, at *9 (M.D.

Fla. May 22, 2020); *see also Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368–69 (S.D. Fla. 2015) (holding that "an unjust enrichment claim may be satisfied where a benefit is conferred through an intermediary" even if the benefit came "from a transaction with no direct *contact*" to the defendant and collecting cases). Accordingly, Defendants' Motion will be denied as to Counts I and VI.

**B.    FDUTPA**

With respect to Counts II, VII, and VIII, Defendants argue that Plaintiffs have failed to state a claim under FDUTPA because they are not consumers, the submission of insurance claims is not trade or commerce, and Plaintiffs have not alleged actual damages. To state a claim for FDUTPA, the aggrieved party must allege: "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

Prior to 2001, section 501.211 provided that only consumers could seek damages under section 501.211(2) of FDUTPA. *Bailey v. St. Louis*, 196 So. 3d 375, 382–83 (Fla. 2d DCA 2016). However, in 2001, the statute was amended to replace the word "consumer" with the word "person." *Id.* at 383; *see also* Fla. Stat. § 501.211(2). As a result, numerous appellate courts in Florida have held that the amendment extended standing in FDUTPA cases to non-consumer entities. *See, e.g.*, *Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 869 n.2 (Fla. 3d DCA 2016); *Bailey*, 196 So. 3d at 383; *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015). In the absence of contrary authority from the Florida Supreme Court, this Court is bound by the decisions of Florida's intermediate appellate

courts on issues of Florida law. *See Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012). Therefore, Plaintiffs need not be consumers to assert a claim under FDUTPA.

Defendants also argue that the submission of insurance claims for payment is not "trade or commerce" within the meaning of the statute. FDUTPA prohibits the use of "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," which is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service." Fla. Stat. §§ 501.203(8); 501.204(1). Several courts have already rejected Defendants' argument, finding that the statutory definition of "trade or commerce," which is to be broadly construed, includes the provision of healthcare services. *Advantacare of Fla.*, 2020 WL 2630226, at *8; *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 389 F. Supp. 3d 1137, 1149 (S.D. Fla. 2018). This Court agrees.

Defendants next contend that Plaintiffs have failed to allege actual damages because they have not alleged that their premiums are not adjusted to account for the possibility of fraudulent claims. In support of their argument, Defendants rely on *Ironworkers Local Union 68 v. AstraZeneca Pharmaceuticals, LP*, 634 F.3d 1352 (11th Cir. 2011). In *Ironworkers*, the Eleventh Circuit held that insurers failed to state a claim against a prescription drug manufacturer under the federal Racketeer Influenced and Corrupt Organizations Act because they failed to allege that the prescription was "medically unnecessary or inappropriate according to sound medical practice" and that the possibility of the fraudulent prescription of a drug that was explicitly covered under

6

their policies was not considered in setting their coverage premiums. *Id.* at 1360, 1363, 1366–69.

Here, unlike the plaintiffs in *Ironworkers*, Plaintiffs bring claims directly against the prescriber and have alleged that the treatments rendered were medically unnecessary or inappropriate. Additionally, unlike the insurers in *Ironworkers*, Plaintiffs have not "consciously chose[n] to assume the risk of paying for all medically unnecessary or inappropriate" procedures. *Id.* at 1368. To the contrary, Plaintiffs have explicitly alleged that they were only obligated to pay a portion of the "reasonable expenses for medically necessary" services rendered and had no obligation to cover services that were not lawful when rendered or were submitted pursuant to false or misleading statements. (Doc. 1, ¶¶ 22, 25–26); *see also* Fla. Stat. § 627.736. Accordingly, the Court finds that *Ironworkers* is distinguishable from the facts in this case and does not preclude Plaintiffs' FDUTPA claims.

As to Count VIII,[1] Defendants contend that Plaintiffs have failed to allege a violation of section 817.234 of the Florida Statutes, which prohibits, as relevant, "any service provider, other than a hospital, to engage in a general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge." Fla. Stat. § 817.234(7)(a). Specifically, Defendants argue that the provision does not apply "to physicians or other providers who waive deductibles or copayments or reduce their bills as part of a bodily injury settlement or verdict." *Id.*

---

[1] Defendants also move to dismiss Counts II and VII for failing to allege a violation of FPSRA and direct conduct by Ott. However, as explained fully in the next section, Plaintiffs have adequately alleged violations of FPSRA.

7

Defendants' argument, however, attempts to prematurely litigate the merits of Plaintiffs' claims, which is not proper at this stage in the proceedings.

Plaintiffs have sufficiently alleged that Defendants engaged in a general business practice of waiving or failing to make a good faith effort to collect deductibles and copayments. (Doc. 1, ¶ 130). To the extent that Defendants contend the exception applies, this is an affirmative defense and they have not shown that its application is apparent on the face of the Complaint. *See Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) ("A complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint.").

At this stage in the proceedings, Plaintiffs' have adequately alleged a FDUTPA claim in Counts II, VII, and VIII.

### C. FPSRA

Defendants move to dismiss Plaintiffs' FPSRA claims because the Complaint alleges that Central Florida Imaging and Interventional Associates were wholly owned by Care Centers and fails to allege that Ott or Scheuplein personally made any referrals. With respect to the former, Defendants merely assert that because the businesses are wholly owned there could not have been any prohibited self-referrals and direct the Court to two decisions from the Florida Department of Health. Such conclusory arguments improperly attempt to shift the burden onto the Court to find a basis for dismissal and will not be considered. *See Orta v. City of Orlando*, No. 6:14-cv-1835-Orl-41GJK, 2015 WL 2365834, at *2 (M.D. Fla. May 18, 2015) (citing *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)); *Makita U.S.A., Inc. v. Factory Direct Distribs. LLC*, No.

14-80516-Civ, 2014 WL 12605510, at *1 (S.D. Fla. Aug. 6, 2014) ("When parties do not fully develop their arguments and support them with citation to legal authority, the burden upon the Court is improperly increased."). Therefore, the Court will only consider Defendants' second argument.

The FPSRA "prohibits Florida physicians from referring their patients for services to business entities in which the referring physicians have a financial interest." *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 937 (11th Cir. 2013); *see also* Fla. Stat. § 456.053(5)(a) ("A health care provider may not refer a patient for the provision of designated health services to an entity in which the health care provider is an investor or has an investment interest."). Defendants argue that only an individual physician—not a business entity—that personally refers a patient to an entity in which he or she has an investment interest can be liable under FPSRA. In response, Plaintiffs argue that Care Centers can be held liable for the conduct of its owners, that Scheuplein personally referred patients as alleged in the Complaint, and that both Ott and Scheuplein can be held liable for referrals that were made under their direction or control.

First, to the extent that Defendants are attempting to argue that Care Centers cannot be held vicariously liable for the conduct of Ott and Scheuplein, they have not directed this Court to any legal authority supporting that proposition. Indeed, the FPSRA appears to expressly contemplate liability for entities involved in unlawful referrals. *See* Fla. Stat. § 456.053(5)(c)–(d), (f). Second, contrary to Defendants' assertion in the Motion, the Complaint does explicitly allege that Scheuplein made prohibited referrals in violation of the FPSRA. (Doc. 1, ¶ 52). Finally, to the extent that Defendants argue that the referrals by Scheuplein and other health care providers cannot be imputed to Ott,

9

Defendants have not presented this Court with any legal authority to support that argument either. To be clear, Defendants are asking this Court to find that Ott cannot be held liable for directing others to do for his benefit that which the law specifically prohibited him from doing himself. Both common sense and decisions by the Florida Department of Health militate against such an outcome. *See Andres F. Rodriguez, M.D.*, DOH-09-0160-DS-MQA (Fla. Dep't of Health Feb. 18, 2009), http://www.floridahealth.gov/licensing-and-regulation/declaratory/_documents/medical/doh-09-0160.pdf ("However, a referral made by a physician's group practice, its members, or its staff may be imputed to the physician if the physician directs the group practice, its members, or its staff to make the referral or if the physician controls referrals made by his or her group practice, its members, or its staff." (quoting 42 C.F.R. § 411.353(a)). Therefore, Defendants have not met their burden in showing that Counts II or III should be dismissed.

### D.     Declaratory Judgment

With respect to Counts IV and IX, Defendants make what can best be described as a stream of consciousness, throw everything at the wall argument that attempts to raise everything from no actual controversy exists to the *Rooker-Feldman*[2] doctrine. (Doc. 28 at 17–22). At the outset, Defendants incorrectly assert Plaintiffs are seeking retrospective declaratory relief. The Complaint is clear that Plaintiffs are only seeking a declaration as to bills that are currently pending payment and those that will be submitted for payment before the trial on the merits in this case. (Doc. 1, ¶¶ 164, 206). In all other respects, Defendants' arguments as to the existence of an actual controversy are

---

[2] *D. C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923).

conclusory and have been rejected in similar cases. *See Advantacare of Fla.*, 2020 WL 2630226, at *10; *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 104 F. Supp. 3d 1366, 1372–73 (S.D. Fla. 2015) (collecting cases).

Defendants have also not presented this Court with any evidence that the *Rooker-Feldman* doctrine bars Plaintiffs' claims. To be clear, Defendants argue that six claims relied on by Plaintiffs in the Complaint "have been voluntarily dismissed with prejudice" in state court proceedings. (Doc. 28 at 21). However, Defendants have not directed this Court to any case holding that a voluntary dismissal is akin to a judgment under the doctrine. Defendants have also not argued or shown that the issues in this case were actually litigated in those proceedings or are inextricably intertwined with the issues therein such that a decision on the merits would "effectively nullify the state court judgment, or . . . succeed[] only to the extent that the state court wrongly decided the issues." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1286 (11th Cir. 2018) (quotation omitted).

Lastly, to the extent that Defendants argue this Court lacks jurisdiction, their argument fails to direct this Court to any relevant authority or facts in support of that contention and this Court has found none. Thus, Defendants' Motion will also be denied with respect to Counts IV and IX.

**E.     Fraud**

Defendants also seek dismissal of Count V because it is: (1) barred by the economic loss doctrine and (2) not pleaded with particularity. With respect to the former, the economic loss rule only applies to claims arising from products liability under Florida law and, therefore, does not bar Count V. *See Glob. Quest, LLC v. Horizon Yachts, Inc.*,

11

849 F.3d 1022, 1030 (11th Cir. 2017) (citing *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Co.*, 110 So. 3d 399, 401 (Fla. 2013)); *ZSR Patlayici Sanayi A.S. v. Sarac Distribs. LLC*, No. 2:19-cv-864-FtM-38MRM, 2020 WL 3895709, at *3 (M.D. Fla. July 10, 2020).

As to the latter, Defendants argue that Plaintiffs have only made conclusory allegations as to the allegedly fraudulent statements made by Defendants and, further, have not alleged that Ott personally treated or recommended treatment for any patient. To adequately plead a claim sounding in fraud, "pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quotation omitted). In the Complaint, Plaintiffs specifically allege that the fraud is based on the submission of bills for payment for services that were not performed in accordance with applicable laws and regulations and were not medically necessary. (Doc. 1, ¶ 168). These allegations are fully supported by specific facts set forth in the Complaint and the attached records containing the claim number, patient initials, dates of service, and the provider. (*Id.* ¶¶ 52, 64–92, 101–02, 105, 108–10, 112–16, 118–19, 130; Doc. 1-7 at 1–617). Numerous courts have found such allegations to be sufficient under Rule 9. *See, e.g.*, *Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, No. 8:20-cv-2419-VMC-CPT, 2021 WL 949611, at *8 (M.D. Fla. Mar. 12, 2021); *State Farm Mut. Auto. Ins. Co. v. Proactive Spine & Relief Ctr., Inc.*, No. 1:19-cv-04866-AT, 2020 WL 5951333, at *6 (N.D. Ga. Sept. 30,

12

2020); *State Farm Mut. Auto. Ins. Co. v. Advanced Chiropractic & Med. Ctr. Corp.*, No. 18-21127-CIV, 2019 WL 2534908, at *3–4 (S.D. Fla. Mar. 15, 2019).

Finally, Defendants' arguments with respect to Ott are misplaced. Although the Complaint does not allege that Ott personally treated any of the patients or made the misrepresentations to Plaintiffs, the Complaint does allege that Ott was aware of, directed, participated in, and benefited from the allegedly fraudulent conduct. (Doc. 1, ¶¶ 52, 55, 61–62). "A plaintiff pursuing a fraud claim need not show that each defendant *personally* made the misrepresentations at issue in the case. Instead, 'all knowing participants in a fraudulent scheme are legally liable for the actions of an individual who acts to carry out the scheme.'" *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 446 F. Supp. 3d 1032, 1059 (S.D. Fla. 2020) (quoting *United States v. Gonzalez*, 404 F. App'x 403, 405 (11th Cir. 2010)). Thus, Defendants' arguments as to Count V are also without merit.

### IV. CONCLUSION:

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendants' Motion to Dismiss (Doc. 28) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on July 12, 2021.

*[Signature]*
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record