# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY,

    Plaintiffs,

v.

COMPLETE CARE CENTERS, LLC, MARC G. OTT and BRET G. SCHEUPLEIN,

    Defendants.

Case No: 6:20-cv-1240-WWB-EJK

_____/

## ORDER

This cause comes before the Court on Defendants' Motion for Protective Order as to Trade Secrets (the "Motion"), filed April 22, 2021. (Doc. 113.) Therein, Defendants seek the entry of an order protecting them from disclosing documents responsive to Plaintiffs' Request for Production ("RFP") Nos. 4 and 5. (*Id.*) In support of their Motion, Defendants attach the Declaration of Alex Petit, who is the Chief Financial Officer of Complete Care Centers, LLC (hereinafter "CFO"). (Doc. 113-1, ¶ 1.) Plaintiffs oppose the request. (Doc. 124.) For the reasons set forth below, the Motion is due to be denied.

I.  BACKGROUND

Plaintiffs instituted this action against Defendants seeking damages under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), state law unjust enrichment and common law fraud, and Florida's Patient Self-Referral Act, § 456.053. (Doc. 1.) Defendants Ott and Scheuplein are the owners of Defendant Complete Care Centers, LLC ("Complete Care"), which is the parent company of 23 clinics across central Florida. (*Id.* ¶¶ 2–3, 20.) Plaintiffs allege that treatments at several Complete Care clinics were unlawful because the patients were referred from other Complete Care clinics, in violation of Florida's Patient Self-Referral Act. (*Id.* ¶¶ 4–5.)

During discovery, Plaintiffs propounded the following RFPs:

- "All agendas from the Complete Care Entities' monthly staff meetings;" and
- "All handbooks, manuals, instructions, guidelines, policies, procedures, conferences, sessions, or training documents provided to employees and/or independent contractors of the Complete Care Entities."

(RFP No. 5, Docs. 87-1 at 7; RFP No. 4, 96-1 at 7.) Defendants objected to these discovery requests, claiming the discovery requests sought:

> Defendants['] highly confidential or proprietary business information or trade secrets that is not provided to the general public, yet Plaintiffs have not demonstrated the heightened requirement of necessity to justify its production that outweighs Defendants['] interest in maintaining [their] confidentiality. *See, e.g., Laser Spine Inst. v. Makanast*, 69 So. 3d 1045, 1046 (Fla. 2d DCA 2011) (Holding documents pertaining to billing and collection practices are trade secret); *Am[.] Exp. Travel Related Services, Inc. v. Cruz*, 761 So. 2d 1206 (Fla. 4th DCA 2000) (Neither a protective order nor use of a confidentiality agreement to protect the

> company's interest in its manual were sufficient to override the company's concern that its manual was a protected trade secret that was not subject to discovery); *Marlite, Inc. v. Eckenrod*, [2011] WL 39130, at *5 (S.D. Fla. 2011) ("Marlite's customer and pricing information constituted trade secrets."); *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985); *Premiere Lab Supply, Inc. v. Chemplex Indus., Inc.*, 791 So. 2d 1190 (Fla. 4th DCA 2001). . .; *Beck v. Dumas*, 709 So. 2d 601, 603 (Fla. 4th DCA 1998); *Rare Coin-It, Inc. v. I.J.E., Inc.*, 625 So. 2d 1277 (Fla. 3d DCA 1993); *E[.] Colonial Refuse Serv., Inc. v. Velocci*, 416 So. 2d 1276, 1278 (Fla. 5th DCA 1982)

("Trade Secret Objection") (Docs. 87-2 at 15; 96-2 at 14.)

Plaintiffs moved to compel documents responsive to RFP Nos. 4 and 5. (Docs. 87, 96.) The Court overruled the Trade Secret Objection and directed that "responsive documents must be produced upon the entry of the parties into a confidentiality agreement that contains an 'attorneys' eyes only' [("AEO")] provision." (Doc. 107 at 3–4.) The Court also directed the parties to "meet and confer as to an [AEO] provision in the confidentiality agreement. If the parties are unable to come to a resolution, Defendants are directed to file a motion for protective order." (*Id.* at 4.) The parties were unable to agree upon an AEO provision; thus, Defendants filed the instant Motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) permits a court, for good cause, to enter a protective order limiting discovery of a trade secret. Fed. R. Civ. P. 26(c)(1)(G). Florida's Uniform Trade Secret Act ("Trade Secret Act"), Florida Statute §§ 688.01–688.009, defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that [both] derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4). The Florida Statutes provide that an entity can raise a trade secret privilege and "refuse to disclose . . . a trade secret owned by that [entity] if the allowance of the privilege will not conceal fraud or otherwise work injustice." Fla. Stat. § 90.506. There is no absolute bar on the disclosure of a trade secret during discovery. *Id.* Courts, when ordering the disclosure of a trade secret, must take "protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice requires." *Id.* "The party resisting discovery has the burden to show 'good cause' for protecting discovery by showing that the information sought is a trade secret and that disclosure may be harmful." *Del Monte Fresh Produce Co. v. Dole Food Co. Inc.*, 148 F. Supp. 2d 1322, 1323–24 (S.D. Fla. 2001) (citing *Am. Express Travel Related Servs., Inc. v. Cruz*, 761 So. 2d 1206, 1209 (Fla. 4th DCA 2000)).

### III. DISCUSSION

Defendants argue that the documents sought in RFP Nos. 4 and 5 are protected by trade secret privilege. (Doc. 113 at 4–8.) Moreover, good cause exists for a protective order because "[p]ublic disclosure . . . will result in a competitive disadvantage for Defendants." (*Id.* at 11.) It is Defendants' position that an AEO

provision would be futile because Plaintiffs would "inevitably" challenge any AEO designation before this Court. (*Id.* at 2, 12.) In response, Plaintiffs argue that Defendants have neither demonstrated that the documents are subject to the trade secret privilege nor articulated good cause for the protective order. (Doc. 124 at 4–15.) Plaintiffs also claim that the responsive documents are necessary as they would go to how "Defendants incentivized their employees to participate in [their] scheme." (*Id.* at 17.)

The Court was not provided copies of the responsive documents for an *in camera* review. However, Defendants cited authority to support their argument that the type of documents sought in RFP Nos. 4 and 5, i.e., their training manuals and agendas, are generally considered trade secrets under Florida law. (Doc. 113 at 5–7 (collecting cases).) However, the establishment of a trade secret does not automatically protect a party from their discovery obligations. The Federal Rules of Civil Procedure require "good cause" for a protective order, which Defendants failed to articulate.

In cases that the parties cite, judges from the Southern District of Florida have weighed in on when a trade secret should be disclosed during the course of discovery. For instance, those judges there have found that a trade secret may be disclosed if the recipient is not a competitor of the producing party. *See Woolbright v. GEICO Gen. Ins., Co.*, No. 12-21291-CV, 2012 WL 12864931, at *7–8 (S.D. Fla. Nov. 16, 2012) (citing *EchoStar Satellite v. Viewtech, Inc.*, No. 10-60069-MC, 2010 WL 2822109, at *6–7 (S.D. Fla. July 16, 2010)); *Condo. Ass'n of Aquarius, Inc. v. QBE Ins. Corp.*, No. 06-80150-CIV, 2007 WL 9701892, at *5 (S.D. Fla. Mar. 22, 2007).

Defendants claim that disclosure of their trade secrets would result in "substantial harm to their business." (Doc. 113 at 11.) The CFO contends that Plaintiffs are "competitors and adversaries" because they are "party opponents of Complete Care in many state court lawsuits in which Complete Care sues [Plaintiffs] for personal injury protection benefits." (Doc. 113-1 ¶ 8.) With this information, Plaintiffs would be "highly incentivized to attack and discredit Complete Care and its physicians." (*Id.*) The Court disagrees with Plaintiffs.

Under Defendants' definition, every case would involve "competitors" simply by virtue of their engagement in a lawsuit. The Court declines to accept that definition. Being frequent litigation opponents does not make Plaintiffs and Defendants competitors in their respective industries. Plaintiffs are insurance companies and Defendants are medical providers. Consumers go to Plaintiffs for insurance coverage options and to Defendants for medical services. Moreover, Plaintiffs have stated that the documents responsive to RFP Nos. 4 and 5 would demonstrate whether Defendants encouraged their employees to subject patients to medically unnecessary treatment plans. Thus, the case law favors disclosure. *Woolbright*, 2012 WL 12864931, at *7–8; *QBE Ins. Corp.*, 2007 WL 9701892, at *5.

Moreover, the CFO's concern is sufficiently mitigated by the Confidentiality Agreement, as it contains a provision on the "use" of confidential information:

> Except as provided otherwise herein, Confidential Information **shall not be used by the Parties or by any other persons or entities for any business or other purposes unless agreed to in writing by all Parties**. . . . These restrictions on the use of Confidential Information are only applicable to the use by the recipients of another person's or entity's Confidential Information.

(Doc. 124-3 ¶ 4.) Therefore, so long as Defendants designate the responsive documents as "Confidential," Plaintiffs would not be able to use the documents in subsequent litigation without Defendants' express consent. The Confidentiality Agreement provides adequate protection for Defendants; thus, it is unnecessary for the Court to add additional protective measures when ordering the disclosure of the responsive documents. Fla. Stat. § 90.506.

## IV. CONCLUSION

Defendants failed to articulate good cause for the protective order pursuant to Rule 26(c). Therefore, it is **ORDERED** as follows:

1. The Motion (Doc. 113) is **DENIED**;

2. Defendants are **DIRECTED** to provide documents responsive to RFP Nos. 4 and 5 **on or before August 19, 2021.**

**DONE** and **ORDERED** in Orlando, Florida on August 12, 2021.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE