```
                     UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
                          ORLANDO DIVISION


                                    :
 STATE FARM MUTUAL AUTOMOBILE       :
 INSURANCE COMPANY and              :
 STATE FARM FIRE AND CASUALTY       :
 COMPANY,                           :
                                    :
      Plaintiffs,                   :
                                    :   Case No.:
                                    :   6:20-cv-01240-WWB-EJK
 v.                                 :
                                    :   Orlando, Florida
                                    :   January 18, 2023
                                    :   8:36 A.M. - 9:41 A.M.
 COMPLETE CARE CENTERS, LLC,        :
 f/k/a Integrative Physical         :
 Medicine Holding, LLC;             :
 MARC G. OTT, individually; and     :
 BRET G. SCHEUPLEIN,                :
 individually,                      :
                                    :
      Defendants.                   :
                                    :
                                    :
```

**TRANSCRIPT OF TRIAL STATUS CONFERENCE**

**BEFORE THE HONORABLE WENDY W. BERGER**

**UNITED STATES DISTRICT JUDGE**

Proceedings recorded by real-time mechanical stenography.
Transcript produced by computer-aided transcription.

Stenographically reported before:
Heather Suarez, RMR, CRR, FCRR, FPR
U.S. Official Court Reporter
(407) 801-8921 | heathersuarez.usocr@gmail.com
401 West Central Boulevard, Suite 4600, Orlando, Florida 32801

```
 1                         A P P E A R A N C E S

 2      For the Plaintiffs:          James J. Duffy
                                     David I. Spector
 3                                   HOLLAND & KNIGHT, LLP
                                     777 South Flagler Drive
 4                                   Suite 1900, West Tower
                                     West Palm Beach, Florida 33401
 5
                                     David P. Newman
 6                                   HOLLAND & KNIGHT, LLP
                                     701 Brickell Avenue
 7                                   Suite 3300
                                     Miami, Florida 33131
 8

 9      For the Defendants:          Amy M. Bowers
                                     Jacqueline Z. DerOvanesian
10                                   Jeffrey H. Slowman
                                     Ryan K. Stumphauzer
11                                   STUMPHAUZER KOLAYA NADLER
                                     & SLOMAN, PLLC
12                                   2 South Biscayne Boulevard
                                     Suite 1600, One Biscayne Tower
13                                   Miami, Florida 33131

14                                   Bruce S. Rosenberg
                                     ROSENBERG LAW, P.A.
15                                   6950 Cypress Road
                                     Suite 107
16                                   Plantation, Florida 33317

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | (Call to order of the court at 8:36 A.M.) |
| 3 | **THE COURT:** Okay. |
| 4 | **MR. SPECTOR:** Good morning. |
| 5 | **MR. SLOMAN:** Good morning, Your Honor. |
| 6 | With all apologies to the Court, the courtroom deputy, |
| 7 | we accepted a written offer last night; and for a variety of |
| 8 | reasons, we did not inform the courtroom deputy.  We would ask |
| 9 | at this point not to impanel a jury.  And, hopefully, there are |
| 10 | no slipups from here on in, but we would at the very least move |
| 11 | to enforce the settlement agreement that -- the written |
| 12 | settlement agreement that we accepted last night. |
| 13 | **THE COURT:** So you did accept? |
| 14 | **MR. SLOMAN:** We did. |
| 15 | **THE COURT:** Okay. |
| 16 | **MR. SPECTOR:** May I, Jeff? |
| 17 | Your Honor, we have a different view on this. |
| 18 | **THE COURT:** Okay. |
| 19 | **MR. SPECTOR:** Two days ago, without disclosing |
| 20 | anything I should not disclose, the defendants made an offer. |
| 21 | We provided a written counteroffer at 3:52 two days ago.  We |
| 22 | then came to -- did not hear from them, came to court, did what |
| 23 | we had to do yesterday.  At 9:00 P.M. last night, we received |
| 24 | an e-mail from Mr. Stumphauzer that said, "Gentlemen, your |
| 25 | counteroffer is accepted." |

1      I picked up the phone, and I called -- and Ryan knows
2 I'm going to talk to you about this. I picked up the phone,
3 and I said, "I just want to make sure you understand what
4 that -- because our counteroffer that you -- that you
5 purportedly accepted did not mirror, on some of the terms, the
6 initial offer." There was one issue. It was about whether or
7 not the third-party claims were being waived. I had told
8 Mr. Stumphauzer. He said that's his understanding as well.
9      Subsequently to that, I received an e-mail that said,
10 "Third-party claims are not waived by that offer. We need to
11 tell the judge, basically."
12      And I responded, and I said, "We do not have a
13 settlement. We did not -- the term that you attempted to
14 accept included a waiver of all third-party claims. You are
15 now telling me, in your view, it does not. We do not have a
16 settlement. Do not advise the Court."
17      So we do not believe -- now, the wrinkle to that --
18 the decision-maker behind that had some personal challenges
19 last night for me to get in touch, which it was late in the
20 evening. He will be here later today, but he won't get here
21 until probably around noon.
22      So at this point our position is we don't have a deal.
23 There is not anything they can enforce. If we have to, of
24 course, brief it before the Court, of course we would. We are
25 here to try a case, and we -- I think we need to get this jury

1   in here and get this started.

2   **THE COURT:** Well, I mean, I don't want to waste their

3   time if this case -- I mean, what -- you sent over a

4   counteroffer, and they said, "We accept your offer"?

5   **MR. SLOMAN:** That's right.

6   **THE COURT:** And you're saying, "Wait. No"?

7   **MR. SLOMAN:** That's right.

8   **MR. SPECTOR:** No. I'm not saying no. I'm saying if

9   you look at the written words in our counteroffer that they

10  accepted, it encompasses a waiver of all third-party claims.

11  They're saying it doesn't.

12  **THE COURT:** Well, I mean, it says what it says.

13  **MR. SLOMAN:** Exactly.

14  **MR. SPECTOR:** I concur with that.

15  **THE COURT:** What does it say?

16  **MR. STUMPHAUZER:** Your Honor, I'd only offer one

17  correction, and Mr. Spector did tell me he was going to mention

18  this phone conversation. I'm fine with that. The good news is

19  everything's in writing. Anything that's important is in

20  writing, as you just said. So after many hours of

21  discussions -- so I also want to apologize to the court

22  staff -- without any previous phone conversations about

23  accept/reject anything, I literally sent an e-mail, the

24  entirety of which says, "We accept. Should we start working on

25  the draft or would you like to?"

1                After that Mr. Spector did, in fact, tell me -- I
2    disagree a little bit with the phone conversation.  I think he
3    was trying to clarify things.  He goes "Look.  From my
4    perspective, I want you to understand this includes third-party
5    claims."
6                I did not say I agree.  I said, "Hold on."  So then --
7    obviously, no lawyer's going to agree to that without talking
8    to their client.  There is wording in the agreement.  Again,
9    Mr. Spector immediately made me aware.  When I said, "We
10   accept," he writes back, you know, "If this wasn't your
11   understanding on this term, we don't have a deal."
12               But look.  Everything's in writing because I wrote him
13   back and said we accepted exactly what you wrote below.  So, to
14   me, at this point it's a settled case.  There's nothing to be
15   decided except, I guess, maybe interpretation of the settlement
16   agreement.  I just wanted to clarify the phone call issue
17   because the good news is it's in writing.  The phone call came
18   after the "I accept," which won't be disputed because it's, I
19   mean, electronic.  So it says what it says.
20               **THE COURT:**  I mean, if you sent him an offer and he
21   accepted the offer, to me, what is there to --
22               **MR. SPECTOR:**  Well, when I clarified it with
23   Mr. Stumphauzer, it was very clear that what they -- what they
24   thought they were accepting was not what we issued to them.  So
25   it was very apparent from our standpoint that we said one

1   thing -- and I will read it to the Court what I said.  It was
2   Mr. Duffy, actually, who wrote it, but that's fine.  It said a
3   "waiver of Complete Care's AR."  There's no limitation on it at
4   all.  It didn't limit it to only first party.  It said a,
5   quote, "waiver of Complete Care's AR."
6   　　　　　So when I spoke to Mr. Stumphauzer and I said, "You
7   understand that unlike prior offers that had a limitation
8   language to only being first party, you know, no fault, this
9   did not.  There was no limitation."  And it became very
10  apparent that their side thought one thing and our side thought
11  another.
12  　　　　　But, to me, a complete waiver of AR means a complete
13  waiver of AR.  First party, third party.  There was no -- there
14  was no limitation in that language.
15  　　　　　**MR. STUMPHAUZER:**  I actually agree.  The only way in
16  which we disagree is he said a "waiver of all AR," which would
17  mean money that State Farm owes to us.  He just clarified for
18  you this is a third-party claim.  So it's not State Farm that
19  owes the money to us.  It's the patient.  It's not their AR.
20  　　　　　But look.  Again, rather than argue the substance, I
21  guess what I would say is, to me, what we have left at this
22  point and for purposes of not wasting the jury's time, I guess,
23  is an interpretation of what's in writing.  And I know
24  Mr. Spector disagrees.  I know he said somebody's, you know,
25  coming in later today.  I don't even know if it makes sense to

1       wait for that or if we're on the same page.

2               **MR. SPECTOR:**  I was just trying to be candid that the

3       decision-maker was en route, and I was being open about that.

4       My suggestion, for whatever it's worth, is swear the jury,

5       let's do openings, give them a lunch break.  Perhaps there's a

6       chance for us to -- I mean, I'm assuming the jury is here.

7       That would be my suggestion, Your Honor.

8               **MR. STUMPHAUZER:**  And as you may imagine, I oppose

9       that only because I think Your Honor very wisely told them they

10      had been selected but they weren't sworn.  I think to swear a

11      jury while an issue of this magnitude is pending -- I, quite

12      frankly, haven't even had the chance to think through what all

13      the consequences are, but I think there could be res judicata

14      impact on thousands of claims in state court.

15              You know, at minimum -- I don't even know if it would

16      be an evidentiary hearing, but, you know, I would like to have

17      the opportunity to address on my client's behalf whether we

18      have an enforceable deal.  I know this sounds like a very bad

19      law school typo.  But, you know, to me there was an offer in

20      writing; there was an acceptance in writing.

21              **THE COURT:**  Okay.  Can you not get ahold on the

22      telephone -- we have to wait for this individual to show up?

23              **MR. SPECTOR:**  We can certainly --

24              **THE COURT:**  Why don't you try to do that?

25              **MR. SPECTOR:**  Similar to the issue we addressed at

1  sidebar last night, there was a similar circumstance last
2  night.
3           **THE COURT:**  Okay.  Well, see if they can -- you can
4  get them on the phone.
5           All right.  I'll be back.
6      (Recess at 8:46 A.M. until 9:32 A.M.)
7           **THE COURT:**  All right.  Were you able to get in touch
8  with whoever you were supposed to get in touch with?
9           **MR. SPECTOR:**  He's here present in the courtroom,
10 Your Honor.
11          **THE COURT:**  Okay.  Were you-all able to resolve
12 anything?
13          **MR. SPECTOR:**  We have made another offer to see if
14 there's a potential resolution.
15          **THE COURT:**  Okay.
16          **MR. STUMPHAUZER:**  Fairly confident to tell you my
17 client would like to stick with the first deal he accepted.
18          **THE COURT:**  I mean, we have -- what I have in front of
19 me is a counteroffer and acceptance in writing.  Now, what that
20 means is a -- what the words in that counteroffer mean is a
21 legal issue.  It's not a factual issue.
22          And so what I typically do when I get an offer and an
23 acceptance is I issue a 60-day order.  I dismiss the case.
24 And, you know, if there needs to be litigation on the
25 enforcement of the judgment and what that language means,

1    that's done through motions between the parties.

2          But there's really nothing for the jury to decide when
3    you have a counteroffer and you have an acceptance. I mean,
4    the words on there say what they say, and it's up to the Court
5    to decide what they mean if there's a dispute over the meaning
6    of what they are. That's what I would propose. I mean, there
7    was an offer, a counter, "We accept." And then "We accept
8    precisely" -- "We accept exactly what you wrote in the e-mail
9    below." So that's an acceptance of exactly what you wrote in
10    the e-mail below.

11          Now, whether you-all are going to squabble over what
12    the e-mail says is something for the Court to decide, not a
13    jury to decide. So there's really no sense in beginning a
14    trial that may have other consequences by swearing the jury in
15    a case that has resolved.

16        **MR. SPECTOR:** I guess the downside, just kind of
17    thinking out loud for a moment, is my -- and I haven't looked
18    at the law overnight, obviously, but my understanding of the
19    law is if there was an ambiguity in what that term meant, there
20    may not be a deal. Right? And if there isn't and we have the
21    jury here -- I mean, I understand the Court's concern. I'm
22    thinking through this as we're going.

23        **THE COURT:** Who wrote the e-mail?

24        **MR. SPECTOR:** The one that was arguably accepted, in
25    air quotes?

1        **THE COURT:** Uh-huh. Mr. Duffy wrote it.

2        **MR. SPECTOR:** Mr. Duffy wrote it. Right.

3        That's my concern. So there may need to be a trial

4   not because -- if the Court finds that that term had different

5   meanings to two different parties, my understanding under

6   Florida law is that then there would not be an enforceable

7   contract on that term. That's why I'm concerned, Your Honor.

8        **MR. STUMPHAUZER:** Your Honor, Mr. Spector pointed out

9   yesterday that my partner is a former U.S. attorney, so

10  certainly understands the discovery, the same way he's

11  represented State Farm for a decade. He knows what third party

12  means. I think the easiest way to address third party would be

13  to say "third party."

14       In any event, as you pointed out, what this is at this

15  point -- even if he's got a point -- you know, maybe there's an

16  argument that there's no mutual assent. You know, at most we

17  would -- you know, we wouldn't be calling a jury back. I think

18  we would have to have an evidentiary hearing about whether

19  that's enforceable. And I agree with you. I don't think it's

20  evidentiary. I think it's purely legal.

21       **THE COURT:** It's a legal question about what those

22  words mean. What does a "waiver of all AR" mean?

23       **MR. SPECTOR:** I don't disagree, Your Honor.

24       **THE COURT:** So I'm going to release the jury. I am

25  going to issue a 60-day order. I am going to require both

```
 1    sides to pay costs for the jury for the two days that they were
 2    here because we couldn't call them off last night and just --
 3    you know, we were here till almost 9:00 waiting on what was
 4    supposed to be filed.  And I got an e-mail from Regina --
 5    luckily, I was up at 4:30 this morning -- with some stuff that
 6    was filed.  And so I didn't really get a chance to start
 7    reviewing and reading all the cases and everything that were in
 8    the trial memo until early this morning.  So --
 9              MR. STUMPHAUZER:  Your Honor, there's a subsequent
10    e-mail chain.  I'm glad to share it with you if Mr. Spector
11    is --
12              MR. SPECTOR:  I don't know what you're referring to,
13    honestly.
14         (Off-the-record discussion amongst counsel.)
15              MR. SPECTOR:  I'm happy to say Mr. Stumphauzer
16    e-mailed -- actually, I don't know if it was an e-mail or a
17    text at this point.  We should advise the Court, after
18    Mr. Stumphauzer e-mailed us around 9:00 or whatever it was,
19    9:30, at the same time there were two -- there were two things,
20    just so the Court is aware, that were happening.  Right?
21    Mr. Stumphauzer was going to e-mail the discovery that he
22    thought supported his position, and we purposely were just
23    waiting for that to go before we filed the trial brief --
24    right? -- because that was the -- kind of like cart before the
25    horse or whatever.
```

1       So at that point I said to Ryan -- I said to
2  Mr. Stumphauzer, I think we still got to get that -- that
3  discovery before the Court because I knew Regina was e-mailing
4  us, and I said to Ryan -- right?  And then that's when you
5  ended up sending it.
6       **MR. STUMPHAUZER:**  Here's the good news, Your Honor.
7  Even that is in writing.  So what I said is "We need to submit
8  this," and he said, "That would be disingenuous because we're
9  making the Court read something that it doesn't need to read."
10      **MR. SPECTOR:**  Correct.
11      **MR. STUMPHAUZER:**  Okay.
12      **MR. SPECTOR:**  And then it was -- and we filed.  They
13 sent it in.  We filed.  He's right.  So that's what was going
14 on 9:30, 10:00 last night.
15      **THE COURT:**  Okay.
16      **MR. SPECTOR:**  And you are correct.
17      **MR. STUMPHAUZER:**  On a larger point, Your Honor, I
18 think the only thing we could both agree on is to apologize to
19 you and your staff because we get, and all the jurors.  I know
20 that you worked late.  I know they came in, presumably, this
21 morning.  So --
22      **MR. SPECTOR:**  And we obviously share that, Your Honor.
23      **THE COURT:**  Okay.  All right.  I'm going to send the
24 jury home.  They weren't sworn.  Hopefully this case is not
25 going to have to be tried, but I will issue a 60-day order, and

1 then we can move forward with whatever needs to be filed after
2 that if there's no meeting of the minds and you-all need me to
3 decide what it says.
4     Is there anything?
5     **MR. STUMPHAUZER:** No. We understand what Your Honor
6 said.
7     **THE COURT:** Okay. We will be adjourned.
8   (Proceedings concluded at 9:41 A.M.)
9     - - -
10     **CERTIFICATE OF REPORTER**
11 I certify that the foregoing is a correct transcript of the record of proceedings in the above-titled matter.
12
13 _Heather Suarez_     01/31/2023
   Heather Suarez, RMR, CRR, FCRR, FPR     Date
14 U.S. Official Court Reporter